UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Thomas W. Gadbaw, individually, as
Surviving Spouse of Ronda Kay Gadbaw,
deceased,

Plaintiff,

v.

Tracy M. Downs, M.D.

Defendant.

COURT FILE NO. 14-CV-202

**COMPLAINT**

---

Plaintiff, for his cause of action against the Defendants herein, and each of them, alleges and states as follows:

1. Jurisdiction of the United States District Court for the Western District of Wisconsin exists pursuant to 28 U.S.C., § 1332 in that the matter in controversy exceeds the sum of Seventy-five Thousand ($75,000) Dollars, exclusive of interest, costs and disbursements and that the controversy is between citizens of different states.

2. Plaintiff, Thomas W. Gadbaw, individually, as surviving spouse of Ronda Kay Gadbaw, deceased, is a resident of the State of Minnesota.

3. At all times material hereto, upon information and belief, Defendant Tracy Downs, M.D. was a urologic surgeon employed by UW Hospital and Clinics, and by University of Wisconsin Medical Foundation, Inc.

4. At all times material hereto, upon information and belief, Defendant Tracy M. Downs, M.D. was a resident of the State of Wisconsin, and treated decedent Ronda Gadbaw at UW Hospital and Clinics, located in Dane County, Wisconsin.

5. At all times material hereto, Defendant Tracy M. Downs, M.D., was the primary health care provider to Ronda Kay Gadbaw for a cystic mass on Ronda Kay Gadbaw's left kidney.

6. Ronda Kay Gadbaw received urologic medical care from Defendant Tracy Downs beginning on October 28, 2010, through the date of her death on January 15, 2011.

  a. On January 12, 2011, at UW Hospital, Dr. Downs performed a left hand-assisted laparoscopic radical nephrectomy surgery on Ronda Kay Gadbaw for removal of a cystic-enhancing mass on her left kidney.

  b. The January 12, 2011 surgery was complicated by bleeding from the left renal vein requiring conversion to an open procedure which was complicated by left renal aortic injury with a stapler, resulting in hemorrhage and excessive blood loss and resulting in abdominal compartment syndrome, multisystem organ failure.

  c. The operative and progress notes of Dr. Downs describe the events that led to laceration of Mrs. Gadbaw's aorta. He documents the decision to proceed with a non-adrenal-sparing surgery in order to get better margins, and was about 2 hours into the surgery. A progress note (in part) written by Dr. Downs describes the following sequence of events:

"She had two renal arteries and two renal veins. At this point in the case, I then had a fair amount of stretch on the kidney in order to show myself the hilar vessels. My plan was that if I could free up the entire kidney with the exception of the renal hilum that because of the complex renal hilum that I would consider using the eschelon stapler to take both the renal artery and vein simultaneously. I had measured several times to see if I could go up and take the hilum en bloc with the stapler but I still felt adherent at the upper pole and in trying to get better exposure and set-up the renal hilum I had the kidney rotated medially with the renal hilum on stretch. It was at this point in the case that a mild ooze from the renal vein became very significant. At this point, I grabbed and tried to control the vessel and pinch it as much as I could. After suctioning to give myself better visualization I then applied the stapler across the hilum and the bleeding started to slow down. In firing the stapler now I know

2

       that it transected the left renal artery at its attachment into the aorta leading to an aortic tear."

   d.   The aortic tear was described in the medical records to be "nickel sized." Vascular surgery was consulted and arrived to place a Goretex patch to the aorta. Blood loss was not measured, but was described as "massive." Mrs. Gadbaw was transfused in the operating room with 22 u PRBCs, 12 u FFP, 5 u c platelets, 2 u cryoprecipitate, and 6000 ml crystalloid.

   e.   As a result of the hemorrhage, Ronda Kay Gadbaw developed abdominal compartment syndrome and multisystem organ failure.

   f.   Ronda Kay Gadbaw died 3 days post-operative on January 15, 2011, at UW Hospital in Madison, Wisconsin.

   g.   Surgical biopsy examination diagnosed the renal mass as clear cell carcinoma with intrinsic multinodular/cystic growth pattern; 3.6 cm; Fuhrman nuclear grade 2, with extension into perinephric adipose tissue; clear margins.

7.   In providing medical care and treatment to Ronda Kay Gadbaw, Defendant Tracy Downs, M.D. was negligent by departing from that degree of skill and care normally possessed and exercised by reasonable urologic surgeons under the same or similar circumstances. Illustrations of said negligence, cited by way of example, but not by limitation are as follows:

   a.   Dr. Downs knew or should have known that this surgery would be difficult given the location of the tumor near the renal hilum, combined with the fact that the decedent was obese. Under these circumstances, accepted standards require that a partial nephrectomy be considered, and that a progress note be made setting forth the basis for deciding on whether a partial or radical nephrectomy will be performed. Here there was no documentation as to whether a partial nephrectomy was considered, nor was there a note indicating the reasons for performing a radical nephrectomy.

   b.   Surgeon Tracy Downs negligently applied a surgical stapler to the renal artery proximate to its attachment to the aorta, negligently impacting the aorta and causing a laceration of the aorta, which is described in the progress notes as being a "nickel-sized" laceration. Accepted standards of care under the circumstances require that the surgeon must visualize

3

the anatomy to which the stapler is being applied before activating the stapler. Accepted standards of care require that a surgeon avoid utilizing a surgical stapler on or proximate to the aorta, given the high risk for hemorrhage if the aorta is lacerated. In the event a surgeon cannot visualize the anatomy to which the stapler is to be applied, accepted standards of care require that the surgeon immediately convert to an open laparotomy in order to clearly visualize anatomy to which a surgical stapler will be applied. Here, the medical records authored by Dr. Downs indicated that he had difficulty visualizing the area to which the stapler was applied. The act of proceeding to apply the stapler, while in close proximity to the aorta, but without clear visualization of the area to which the stapler was applied was a deviation from accepted standards of medical care. Dr. Downs' action in utilizing the surgical stapler under these circumstances caused laceration of Ms. Gadbaw's aorta, which resulted in excessive intra and postoperative hemorrhage.

c. Ronda Kay Gadbaw's death three days post-operative was caused by complications of the left nephrectomy, including but not limited to laceration of the aorta and massive blood loss. This complication was a direct and proximate cause of her untimely death. Had the nephrectomy been performed successfully, and laceration of the aorta had been avoided, Mrs. Gadbaw would have more likely than not have successfully recovered and a normal life expectancy of 41.1 years would be assumed.

d. Defendant acted or failed to act in other ways that departed from accepted standards of medical care under the circumstances.

8. As a direct and proximate result of the negligence of the Defendant, Ronda Kay Gadbaw died on January 15, 2011.

9. As a result, Plaintiff Thomas W. Gadbaw has been damaged as follows:

   a. Plaintiff Thomas W. Gadbaw has incurred medical expenses for the care and treatment of Ronda Kay Gadbaw, deceased.

   b. Plaintiff Thomas W. Gadbaw has incurred funeral and burial expenses.

   c. Plaintiff Thomas W. Gadbaw has in the past and will in the future suffer a loss of consortium.

   d. Plaintiff Thomas W. Gadbaw has in the past and will in the future suffer a loss of (aid) society and companionship (loss of love and affection).

e. The decedent, through her estate, suffered a pre-death pain and suffering as a result of the negligence of Tracy Downs, M.D.

f. Plaintiff has been otherwise damaged.

14. Pursuant to Wis. Stat. § 655.44 the Plaintiffs filed a request for mediation, and the mediation period has expired.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants, and each of them, for a reasonable amount in excess of Seventy-five Thousand Dollars ($75,000), together with their interest, costs and disbursements herein.

**TRIAL BY JURY DEMANDED.**

Dated: March 13 2014      HALLBERG & McCLAIN, P.A.

BY: _____
TERESA FARISS McCLAIN (MN ID 312873)
Attorneys for Plaintiffs
380 St. Peter Street, Suite 715
St. Paul, MN 55102
651 255-6810

and

THOMAS JACOBSON (WI ID 1016247)
Attorneys for Plaintiffs
Lommen Abdo Law Firm
Grandview Professional Building, Suite 210
400 South Second Street
Hudson, WI 54016
(715) 386-8217