IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS W. GADBAW, individually, as
Surviving Spouse of Ronda Kay Gadbaw,
deceased,

                        Plaintiff,                      OPINION & ORDER

v.

                                                     14-cv-202-jdp

TRACY M. DOWNS,

                        Defendant.

---

Plaintiff Thomas W. Gadbaw lost his wife Ronda four years ago when she died from complications of surgery to remove a tumor and her kidney. Defendant is her surgeon, Dr. Tracy M. Downs, a physician and professor employed by the University of Wisconsin School of Medicine and Public Health. Dr. Downs inadvertently lacerated Ronda's aorta with a surgical stapler while attempting to stop the bleeding from a renal vein. Gadbaw filed this suit against Dr. Downs contending that the fatal laceration was the result medical malpractice.

Dr. Downs moves for summary judgment on the grounds that Gadbaw's suit is untimely because it was filed more than three years after the injury, and more than a year after Gadbaw could have discovered the material facts supporting his claim, had he been reasonably diligent. The court will grant Dr. Downs's motion. Dr. Downs detailed the error that led to Ronda's death in his postoperative notes three days after the surgery. Even if Dr. Downs did not tell the Gadbaw family what happened during surgery (this point is disputed, so the court accepts Gadbaw's account), Gadbaw learned that Ronda died of an aortic laceration within a week, and he was concerned enough to contact an attorney about a possible malpractice claim. Had either Gadbaw or his attorneys requested medical records at the time, Gadbaw would have learned all the details on which he now relies to press his malpractice claim. Even without full medical

Dkt. 20-1, at 2.

The Dane County Medical Examiner's Office received a copy of the death certificate from the UW Hospital, which categorized the death as "Natural" and listed the cause of death as "Iatrogenic Trauma to a Blood Vessel—Aorta During Surgery." An autopsy was performed with Gadbaw's knowledge and consent on January 18, 2011. The report of the medicolegal investigator, who spoke with Gadbaw multiple times, recounted in detail Gadbaw's description of the events during and after Ronda's surgery. Dkt. 20-3. The report also included the vascular surgeon's description of the surgery, which stated that "during the initial surgery, a left nephrectomy, surgeons made a hole in the aorta and [the vascular surgeon] was called in to patch it." *Id.* at 4. The medicolegal investigator stated that she spoke with Gadbaw the day after the autopsy and advised him of its findings. The death was classified as "Natural" (as opposed to "Accidental," "Suicide," "Homicide," or "Undetermined") and its cause was identified as "Complications of Left Nephrectomy." Gadbaw requested a copy of the autopsy report on March 26, 2011. *Id.* at 19.

According to Gadbaw, after learning that an autopsy had been ordered, he contacted a law firm in Beaver Dam, Wisconsin, to find out if he might have a claim for wrongful death or medical malpractice. Gadbaw explains that he did so because the cause of death listed on the death certificate ("Iatrogenic Trauma to a Blood Vessel—Aorta During Surgery") was not consistent with what Dr. Downs had told him. Dkt. 23, at 3. Gadbaw does not remember the name of the law firm, but it advised him that he did not have an adequate basis to bring a wrongful death or medical malpractice claim.

On May 20, 2011, Gadbaw requested a portion of Ronda's medical records, limited to "financial responsibility signature pages" in a narrow timeframe. Dkt. 30, at 2. In March 2012, Gadbaw again requested a portion of Ronda's medical records, this time garnering almost 300

3

records, the critical facts were available in the autopsy report, which Gadbaw received shortly after Ronda's death.

## UNDISPUTED FACTS

The following facts are, except where noted, undisputed.

Dr. Tracy M. Downs is a physician who specializes in the surgical treatment of urologic cancer. He is a professor employed by the University of Wisconsin School of Medicine and Public Health, and as such he is a state employee.

On January 12, 2011, Dr. Downs performed surgery on Ronda to remove a cystic mass and with it her left kidney. As he moved her kidney in preparation for its removal, Dr. Downs discovered bleeding from her renal vein. Dr. Downs tried to control the bleeding with a surgical stapler, but the staple caused a nickel-sized tear in her aorta. A vascular surgeon was immediately called in to repair the tear, but Ronda suffered massive blood loss and died three days later.

Immediately following the surgery, Dr. Downs met with the Gadbaw family to discuss the surgery and its complications. The parties dispute whether Dr. Downs told the family about the aortic laceration. For the purposes of this motion, the court will accept Gadbaw's version: Dr. Downs said that he had encountered unexpected bleeding, but he did not tell the family that he had inadvertently lacerated Ronda's aorta with a surgical stapler.

Dr. Downs prepared postoperative notes detailing the surgery, including the aortic laceration, on January 15, 2011. Those notes stated, in part:

> After suctioning to give myself better visualization I then applied the stapler across the hilum and the bleeding started to slow down. In firing the stapler now I know that it transected the left renal artery at its attachment into the aorta leading to an aortic tear.

pages of documents. *Id.* These documents included Dr. Downs's postoperative notes. Dkt. 30-1, at 49-52.

The time after Ronda's death was understandably difficult for Gadbaw, and he worked long hours to support his family. He relocated to Minnesota for work in 2013. At the urging of Ronda's family, in October 2013, he retained counsel to investigate a potential claim for wrongful death or medical malpractice. Gadbaw contends that he first learned of Dr. Downs's negligence on November 22, 2013, when he was informed that a medical expert retained by his new law firm opined that Dr. Downs had deviated from accepted standards of care.

On January 9, 2014, Gadbaw filed a notice of claim with the Wisconsin Department of Justice to provide notice of his wrongful death medical malpractice claim. Four days later, he filed a request for medical mediation with the Office of Medical Mediation Panels. On March 13, 2014, Gadbaw filed his complaint in this court.

## ANALYSIS

Gadbaw, a citizen of Minnesota at the time of filing, brings a claim of medical malpractice against Dr. Downs, a citizen of Wisconsin. The parties are completely diverse and the amount in controversy exceeds $75,000. Accordingly, this court has diversity jurisdiction under 28 U.S.C. § 1332.

Dr. Downs contends that he is entitled to summary judgment because Gadbaw's suit is not timely under Wisconsin's statutes of limitations for medical malpractice actions. Summary judgment is appropriate if Dr. Downs shows that "there is no genuine dispute as to any material fact and [he is] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on Dr. Downs's motion for summary judgment, the court views all facts and draws all reasonable inferences in the light most favorable to Gadbaw. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.* at 248.

Under Wisconsin law, there are two basic limitations periods for claims of medical malpractice. A filing within either period is timely. *Storm v. Legion Ins. Co.*, 2003 WI 120, ¶ 19, 265 Wis. 2d 169, 665 N.W.2d 353. First, under Wis. Stat. § 893.55(1m)(a), claims of medical malpractice may be brought three years from the date of injury. Gadbaw's claim is untimely under (1m)(a) because it was filed three years and 60 days after the injury.

The second limitations period is in Wis. Stat. § 893.55 (1m)(b), which provides that claims of medical malpractice may be brought one year from the date the injury was discovered or should have been discovered. The one-year limitations period under (1m)(b) is also subject to a five-year statute of repose, which means that a claim would be untimely five years after the act or omission, even if the latent injury had not yet been discovered. *Storm*, 2003 WI 120, ¶ 19. The statute of repose is not relevant to this case because Gadbaw's complaint was filed well within the statute of repose. But Gadbaw's complaint was not filed within one year of discovery of the injury to Ronda.

Yet another statutory provision is the one pertinent to this case: it applies when a health care provider conceals the injury-causing act or omission. Under Wis. Stat. § 893.55(2), a claim is timely if commenced within one year of the date the plaintiff discovers, or with reasonable diligence should have discovered, a health care provider's concealment of an act or omission that caused the injury. Gadbaw contends that his action is timely because the concealment statute applies. According to Gadbaw, Dr. Downs concealed his role in the injury, and Gadbaw did not discover this concealment until November 22, 2013. If true, Gadbaw's claim would be timely under Wis. Stat. § 893.55(2). Thus, the question before the court is whether Gadbaw brought suit within one year from the date that he discovered or should have discovered Dr. Downs's

5

concealment of his laceration of Ronda's aorta.

The court concludes that this action is untimely because Gadbaw knew, or at least should have known, of the alleged concealment just after the autopsy on January 18, 2011. Gadbaw admits that about this time, he realized that the death certificate and the autopsy results did not match what Dr. Downs had told him about the surgery, and he even contacted a lawyer to evaluate a claim for Ronda's death. Thus, his suit is untimely because it was filed more than three years after the injury, more than one year after he discovered the injury, and more than one year after he discovered, or at least should have discovered, Dr. Downs's alleged concealment.

### A. Concealment statute

Wisconsin's medical malpractice concealment statute allows a lawsuit to be commenced within one year from the date that a patient discovers or should have discovered a health care provider's concealment of a prior act or omission. Gadbaw discovered the concealment when he had information providing the basis for an objective belief that Dr. Downs concealed the injury. *See Groom v. Professionals Ins. Co.*, 179 Wis. 2d 241, 249-50, 507 N.W.2d 121, 124-25 (Ct. App. 1993). On the record before the court, Gadbaw discovered Dr. Downs's concealment around January 18, 2011. On that date, the funeral home notified Gadbaw that the Dane County Medical Examiner's Office had recalled Ronda's body to perform an autopsy because the death certificate categorized her death as "Natural" and caused by "Iatrogenic Trauma to a Blood Vessel—Aorta During Surgery." Dkt. 23, at ¶ 9. Gadbaw contends in his declaration that he contacted a law firm at that point because of the discrepancy between the death certificate and "what defendant Downs had told [Gadbaw] about the cause of Ronda's injury." *Id.* Thus, Gadbaw knew then that Dr. Downs had not told Gadbaw the true nature of Ronda's injury. Because Gadbaw discovered the concealment around January 18, 2011, his suit is untimely

6

because it was filed much more than a year later.

Even if Gadbaw had not actually discovered the alleged concealment in January 2011, the court is not persuaded by his argument that he had exercised reasonable diligence and did not actually discover the concealment until November 22, 2013, when he learned of the opinion of the expert hired by his current attorneys. Dkt. 19, at 10-12. In Wisconsin, reasonable diligence "means such diligence as the great majority of persons would use in the same or similar circumstances." *Spitler v. Dean*, 148 Wis. 2d 630, 638, 436 N.W.2d 308, 311 (1989) (citation omitted). "Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach." *Id.* (citation omitted). Generally, reasonable diligence is a question for the jury. But where the material facts are undisputed and only one reasonable inference can be drawn, whether a plaintiff exercised reasonable diligence is a question of law. *Dakin v. Marciniak*, 2005 WI App 67, ¶ 14, 280 Wis. 2d 491, 695 N.W.2d 867; *Groom*, 179 Wis. 2d at 249-50. In this case, even assuming the facts as alleged by Gadbaw, the only reasonable inference is that he did not exercise reasonable diligence.

Gadbaw had information reasonably accessible to him shortly after the surgery that would have provided the basis for an objective belief that Dr. Downs concealed the injury. The time after Ronda's death was understandably hard for Gadbaw: he worked long hours, suffered from anxiety attacks, and moved to Minnesota for work. Dkt. 23, at 4-5. However, the court must conclude that Gadbaw should have discovered the concealment much earlier than November 22, 2013, the date that he was informed that a medical expert opined that Dr. Downs had deviated from accepted standards of care. Both the autopsy report and postoperative notes were prepared and signed in the same month as the surgery, in January 2011. Gadbaw could have obtained both these documents at the time.

7

The January 18, 2011, autopsy report provides information about the injury. Dkt. 20-3. The medicolegal investigator wrote that Gadbaw said that Dr. Downs had "hit a feeder vessel going into the aorta with either a clamp or the stapler." *Id.* at 3. Even assuming that the medicolegal investigator's account of her conversation with Gadbaw was inaccurate, he would have known of the concealment upon reviewing the report. Gadbaw requested a copy of the autopsy report on March 26, 2011. *Id.* at 19.

Dr. Downs's January 15, 2011, postoperative notes fully described the surgery and Dr. Downs role in the laceration. Gadbaw had access to Ronda's medical records. He requested a portion of Ronda's medical records about four months after her death, but limited his request to "financial responsibility signature pages" in a narrow timeframe. Dkt. 30, at 2. Gadbaw requested a fuller set of Ronda's medical records about a year later, in March 2012, this time garnering almost 300 pages of documents. *Id.* These documents included Dr. Downs's postoperative notes. Dkt. 30-1, at 49-52. With the postoperative notes and autopsy report in hand, Gadbaw had all the information he would have needed to discover that Dr. Downs had concealed the cause of the fatal injury. Even if the court had not concluded that Gadbaw discovered Dr. Downs's concealment on or about January 18, 2011, Gadbaw did not exercise reasonable diligence because in March 2012 he had all the documentation he needed to support his claim, and yet he waited two more years to file this suit.

### B. Gadbaw's reliance on legal opinion

Gadbaw contends that he did not discover Dr. Downs's concealment of the act leading to Ronda's death until late 2013:

> Plaintiff first learned that defendant Downs negligently lacerated decedent's aorta with a stapler during surgery, leading to hemorrhage and death, on November 22, 2013, as a result of expert review of the case.

Dkt. 21, ¶ 23. Gadbaw argues that before he got this expert opinion, solicited by his new lawyers, he reasonably relied on Dr. Downs's misleading description of the surgery, the medical examiner's classification of Ronda's death as "natural," and his first lawyer's opinion that he did not have a viable claim. In essence, Gadbaw contends that his claim did not accrue until he had confirmation that he had a legally viable negligence claim against Dr. Downs. Gadbaw's argument is foreclosed by *Claypool v. Levin*, 209 Wis. 2d 284, 562 N.W.2d 584 (1997).

For purposes of a discovery rule, a claim accrues and the statute of limitation begins to run when a potential plaintiff has information that would give a reasonable person notice of her injury and its cause. *Id.* at 300. This does not require that a potential plaintiff know with certainty the cause of her injury. *Id.* Most important, this does not require that the potential plaintiff realize that she has a legally viable claim: "discovery occurs when the potential plaintiff has information that would give a reasonable person notice of her injury and its cause regardless of whether she has been given a misleading legal opinion." *Id.* at 301. In *Claypool*, the plaintiff made the argument Gadbaw makes here: that she had been reasonably diligent because she had been told by a lawyer that she did not have a claim. The Wisconsin Supreme Court held that reliance on misleading legal advice does not excuse the failure to act on information that the plaintiff knows about her injury and its cause. *Id.* at 301-02.

The court accepts as true Gadbaw's allegation that until November 22, 2013, no one had told him that Dr. Downs had been negligent in performing Ronda's surgery. But the pertinent question is not when Gadbaw discovered Dr. Downs's *negligence*; the question is when did Gadbaw discover Dr. Downs's *concealment* of his laceration of Ronda's aorta. By its terms, the medical malpractice concealment statute is tied to the discovery of the concealment of a prior act or omission, not the discovery of a legally viable claim of negligence. Wis. Stat. § 893.55(2). Like the plaintiff in *Claypool*, Gadbaw cannot rely on legal advice that he later decides is

inadequate, when all along he had the factual evidence he now uses to support his claim.[1]

It does not matter when Gadbaw learned that he had a viable negligence claim. Gadbaw had the evidence that Dr. Downs had lacerated Ronda's aorta well before November 22, 2013, and more than a year before he filed this suit. The court will grant Dr. Downs's motion for summary judgment.

ORDER

IT IS ORDERED that:

1. Defendant Tracy M. Downs's motion for summary judgment, Dkt. 13, is GRANTED.
2. The clerk is ordered to enter judgment for defendant and close this case.

Entered April 10, 2015.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

---

[1] Nor can Gadbaw rely on the classification of Ronda's death as "natural" on the death certificate. As Gadbaw's affidavit shows, he knew that the cause of death was more fully explained as caused by "Iatrogenic Trauma to a Blood Vessel—Aorta During Surgery," and that this cause of death prompted the medical examiner to order an autopsy. Dkt. 23, ¶ 9. The medical examiner also classified the death as "natural" after the autopsy. None of this would foreclose the possibility of Ronda's death being caused by Dr. Down's negligence, which Gadbaw realized because he sought legal advice.